UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALBERICI CONSTRUCTORS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-744 (CEJ) |
| ) | |
| CLONE JEFFERSON OLIVER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Group Contractors, LLC, to dismiss plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposes the motion, and the issues are fully briefed.

**I. Background**

Plaintiff Alberici Constructors, Inc. is a construction company in St. Louis, Missouri. Defendant Clone Jefferson Oliver ("Oliver") was employed by plaintiff as the Vice President of Construction. In 2006, plaintiff entered into a contract with Arlington County, Virginia to upgrade and expand the Arlington County Water Pollution and Control Plant. Oliver was the project director and was responsible for issuing purchase orders and approving invoices submitted by subcontractors. Plaintiff alleges that Oliver devised a fraudulent scheme to divert profits from plaintiff for his own personal gain. Specifically, Oliver encouraged subcontractors to submit improperly inflated invoices, price quotes, and change orders to plaintiff. Plaintiff would pay the prices listed on the invoices and the subcontractors would then pay part of the proceeds to Advanced Construction Solutions, Inc. ("ACS"). It is alleged that ACS was created by Oliver and

defendant Pamela Whitmore for the purpose of diverting and concealing proceeds from inflated invoices.

Defendant Group Contractors ("Group") is a limited liability company in Louisiana, and is one of the eleven defendants named by plaintiff in the amended complaint. On October 2, 2006, at Oliver's direction, plaintiff entered into a $15,100,000 subcontract with Group. Subsequently, Oliver arranged opportunities for defendant William T. Howard, the Vice President and Manager of Group and a close personal friend of Oliver's, to submit change orders and invoices for services outside the scope of the subcontract. Group then diverted these funds to ACS. In total, the eighteen change orders to the Group subcontract inflated the subcontract price to $16,980,909.45, representing an increase of $1,880,909.45. Group also purchased an automobile for Oliver's wife and placed her on the payroll, although she performed no legitimate business services for Group.

Plaintiff asserts the following claims against Group: fraud (Count I), conspiracy to commit fraud (Count II), fraud in the inducement (Count III), breach of duty of loyalty (Count IV), breach of contract (Counts V, VI, VII, VIII), and unjust enrichment (Counts IX, X, XI). Group now moves to dismiss the amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Group argues that Howard acted outside the course and scope of his employment, and therefore Group cannot be found vicariously liable for Howard's conduct. In the alternative, Group contends that if Howard's conduct is imputed to Group, Oliver's conduct must be imputed to plaintiff - in which case, plaintiff and Group would be *in pari delicto*, preventing plaintiff's recovery from Group.

**II. Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S.506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570; see also id. at 562-63 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

**III. Discussion**

**A. Vicarious Liability for Howard's Actions**

It is undisputed, for purposes of this motion, that Howard was Group's employee.  However, Group contests vicarious liability, arguing that Howard acted outside the scope of his employment because Howard's actions were not motivated by a desire to further Group's interests, nor did Group receive any "unearned benefit." Group relies on cases in which Missouri courts applied the doctrine of *respondeat superior* to conclude employees acting to further their own interests were not acting

within the scope of employment. Bradley v. Transportation Sec. Admin., 552 F.Supp. 957, 961 (E.D. Mo. 2008) (finding that a TSA agent did not act within the scope of his employment when he committed theft from a passenger's luggage); Noah v. Ziehl, 759 S.W.2d 905, 910 (Mo. Ct. App. 1988) (declining to hold the owner of a bar vicariously liable when a bouncer violently attacked a patron). Plaintiff, on the other hand, cites to cases in which Missouri courts held employers vicariously liable under the principle of apparent authority.

*Respondeat superior* and apparent authority are two different theories of vicarious liability. They have been acknowledged as such by both the Second and Third Restatements of Agency. Restatement (Second) of Agency § 219 cmt. e, (1958); Restatement (Third) of Agency § 2.04 cmt. b, (2006). See also Premium Fin. Specialists, Inc. v. Hullin, 90 S.W.3d 110, 116 n.3 (Mo. Ct. App. 2002) ("The principles of apparent authority are broader than the principles of *respondeat superior*."). *Respondeat superior* holds employers vicariously liable for employees' acts committed within the course and scope of employment: acts "done by virtue of the employment and *in furtherance of the business or interest of the employer*...." Ewing-Cage v. Quality Prods., Inc., 18 S.W.2d 147, 150 (Mo. Ct. App. 2000) (emphasis added). Under the doctrine of apparent authority, however, it is irrelevant whether an agent acted to benefit the principal.[1] Apparent authority is created "when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent," and third persons reasonably rely upon the agent's appearance of authority. Pitman Place Dev., LLC. v. Howard Invs., LLC., 330 S.W.3d

---

[1] The *respondeat superior* cases cited by Group are inapposite; in neither case was there a factual scenario comparable to the instant one, potentially giving rise to apparent authority. Bradley, 552 F.Supp. at 961; Noah, 759 S.W.2d at 910.

519, 527 (Mo. Ct. App. 2010). A principal may be held vicariously liable for the acts of an agent cloaked with apparent authority, "even when the agent acts wholly out of personal motive or with the purpose of defrauding his principal and even when the principal is innocent and deprived of any benefit." Premium Fin. Specialists, Inc., 90 S.W.3d at 113. See also State of Inf. Taylor v. Am. Ins. Co., 355 Mo. 1053, 1114 (1946) (en banc) ("A corporation is liable for a fraud perpetrated on a third person by its agent within the apparent scope of his authority or the course of his employment even where the wrongful acts are ultra vires or in fraud of the corporation itself, and despite the fact the corporation did not authorize, concur in, or know of the fraud.").

Plaintiff's allegations in the amended complaint are sufficient to support the vicarious liability of Group and survive the motion to dismiss. Under the doctrine of apparent authority as interpreted and applied by Missouri courts, it is of no consequence whether Howard acted in furtherance of Group's business interests and to defendant's benefit. Therefore, the Court will proceed to address Group's alternative argument based on the defense of *in pari delicto*.

### B. *In Pari Delicto*

The common-law defense of *in pari delicto* is often described as the legal equivalent of the equitable doctrine of "unclean hands." E.g., Dobbs v. Dobbs Tire & Auto Ctrs., Inc., 969 S.W.2d 894, 897 (Mo. Ct. App. 1998). *In pari delicto* bars the recovery of a plaintiff who has participated in the defendant's illegal conduct and is equally culpable. The defense derives its name from the Latin phrase *in pari delicto potior est conditio defendentis,* meaning, "in a case of equal or mutual fault... the position of the [defending] party... is the better one." Bateman Eichler, Hill Richards,

Inc. v. Berner, 472 U.S. 299, 306 (1985) (quoting BLACK'S LAW DICTIONARY 711 (5th ed. 1979)).

*In pari delicto* can only apply to a plaintiff corporation through imputation of the wrongful behavior of the plaintiff's agents.  In other words, plaintiff cannot be found to share fault equally with defendant Group, unless Oliver's fraudulent conduct can be imputed to plaintiff.  Group encourages the Court to impute Oliver's conduct to plaintiff, his employer; defendant insists that a ruling attributing Howard's conduct to Group, but not Oliver's conduct to plaintiff, would be inconsistent.  However, the "adverse interest exception" to imputation under *in pari delicto* clearly forbids imputation in Oliver's case, but not in Howard's.  Courts will not impute an agent's conduct or knowledge to a principal when the agent is acting *directly against* the principal. Lumbermens Mutual Casualty Co. v. Thornton, 92 S.W.3d 259, 270 (Mo. Ct. App. 2002); Grassmueck v. American Shorthorn Ass'n, 402 F.3d 833, 837 (8th Cir. 2005) ("The refusal to impute knowledge to the principal of an agent who is acting adversely to the principal is an acknowledgment that the usual legal fiction of complete agent-principal communication is unjustified where the agent is acting adversely.").

Group's demand for the symmetrical treatment of Howard and Oliver ignores the fact that Howard is alleged to have defrauded a third party, while Oliver defrauded his own principal.  A principal may be liable for its agent's fraud of a third party through the doctrine of apparent authority, but not for the  agent's fraud of the principal*.*  The "adverse interest exception" draws "[a] distinction...between a case of management stealing or looting from the company and a case where management is stealing from outsiders."   Grove v. Sutliffe, 916 S.W.2d 825, 830 (Mo. Ct. App. 1995).   The exception applies in the first scenario (stealing from the principal) but not the second

(stealing from outsiders).  Id.  This encourages principals to exercise caution to avoid hiring agents who may defraud third parties; there is no need to further encourage a principal to hire an agent who will not defraud *the principal itself* out of millions of dollars - the natural incentive is already strong enough.  There is no reason to further punish the defrauded principal by allowing others who allegedly colluded with its rogue agent to raise the defense of *in pari delicto*.

In conclusion, the "adverse interest exception" prevents the imputation of Oliver's fraud to plaintiff.  Therefore, the defense of *in pari delicto* is inapplicable to plaintiff's claims against defendant.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Group Contractors, LLC to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. #85] is **DENIED**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of December, 2012.